**NORTH STAR DODGE SALES, INC., Appellant,**

v.

**Yolanda LUNA, Appellee.**

No. 04–81–00314–CV.

Court of Appeals of Texas, San Antonio.

May 18, 1983.

Rehearing Denied June 20, 1983.

Harry B. Adams, III, Larry D. Brockman, Universal City, for appellant.

Barry Snell, San Antonio, for appellee.

Before BUTTS, TIJERINA and DIAL, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a judgment for appellee, Yolanda Luna, against appellant, North Star Dodge Sales, Inc., in a suit alleging violations of the Texas Deceptive Trade Practices—Consumer Protection Act (D.T.P.A.),[1] the Texas Consumer Credit Code (Motor Vehicle Installment Sales), Tex.Rev.Civ.Stat.Ann. arts. 5069–7.01— 5069–7.10 (Vernon Supp.1982–1983), the Truth-In-Lending Act, 15 U.S.C. § 1601 et seq. (1982), and Federal Reserve Board Regulation Z, 12 C.F.R. § 226.1 et seq. The jury awarded damages totaling $66,600.00. The trial court, after remittitur, entered judgment for $55,400.00.

Appellant brings twenty-four points of error: points one and two are predicated on an improper question concerning appellant's financial stability; points six through eight assert the impropriety of the award of damages for mental anguish; points four, nine, ten through twelve and sixteen challenge the award of damages for loss of use of the vehicle; points three, eleven and seventeen contend actual damages were computed improperly; points eighteen and twenty-two challenge appellee's reliance as a consumer on the warranty; points fourteen and fifteen controvert the measure of damages for breach of warranty; point eighteen claims recovery under the Texas Consumer Credit Code was improper; points twenty-three and twenty-four challenge the evidence supporting the finding of unconscionability, and; points twenty-one and twenty-two proclaim the invalidity of the award of attorney's fees. We affirm in part and reverse and render in part.

Appellee Luna purchased a 1980 Dodge Omni from North Star Dodge in March 1980. At that time, appellant offered a 30 day/1,000 mile "money back guarantee" whereby a dissatisfied purchaser could receive a refund of the purchase price. The only conditions were that the request be made prior to the expiration of 30 days from the date of purchase or before the mileage limitation occurred. Luna elected to participate in the warranty program.

Soon after taking possession of the vehicle, appellee returned to North Star Dodge complaining of mechanical difficulties, specifically steering column vibration. Luna testified she made numerous requests for a refund under the warranty program, a fact which was controverted by appellant. Appellee ultimately left the automobile at North Star Dodge, at which time appellant notified her the warranty program had expired due to the mileage exceeding 1,000 miles. Appellee brought suit. The judgment, after remittitur, awarded $55,400.00.[2]

---

1. Tex.Bus. & Com.Code Ann. §§ 17.41–17.63 (Vernon Supp. 1982–1983). Unless otherwise indicated, all statutory references are to be Deceptive Trade Practices—Consumer Protection Act.

2. The judgment consisted of the following amounts;

Points of error one and two are premised on the assertion that appellant's counsel improperly interjected the element of motive by questioning a witness as to the financial solvency of appellant. Appellant complains of the following colloquy between Snell, appellee's counsel, and Patricia Crawford, appellant's finance manager:

Q: [Snell] And North Star Dodge is just about to go down the tubes, isn't it?

A: [Crawford] No, that is not true.

\* \* \* \* \* \*

Q: If Mr. Yedor has told me that they are about to file bankruptcy, is that right or not, if he has told me they are on the verge of bankruptcy?

Appellant objected and moved for a mistrial contending the issue of motive was irrelevant and that the question had improperly created a bad faith motive which could not be purged from the minds of the jurors by a curative instruction. Appellee rejoined that pending bankruptcy was an element relative to the establishment of appellant's motive in failing to refund the purchase price. At the close of the evidence, the motion for mistrial was denied and an instruction to disregard the bankruptcy comment, drafted by appellant, was given.

At the time the case was submitted to the jury, appellee had pled causes of action pursuant to § 17.46(b)(5), (7), (12),[3] and § 17.50(a)(2), (3).[4] Appellant is correct in contending that these specific subdivisions do not require proof or a find-

ing of knowledge or scienter. *See Smith v. Baldwin*, 611 S.W.2d 611, 616–617 (Tex. 1980). However, Luna sought treble damages under § 17.50(b)(1) which provides, in pertinent part:

(b) In a suit filed under this section, each consumer who prevails may obtain;

(1) the amount of actual damages found by the trier of fact. In addition the court shall award two times that portion of the actual damages that does not exceed $1,000.00. If the trier of fact finds the conduct of the defendant was committed *knowingly,* the trier of fact may award not more than three times the amount of actual damages in excess of $1,000.00. [Emphasis added.]

It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981). The statutory language clearly makes it incumbent upon a plaintiff seeking treble damages to establish the conduct of defendant was committed knowingly. We find the inquiry into appellant's financial solvency relevant to the establishment of the actual awareness of the deception or unfairness in refusing appellee's refund. Moreover, assuming *arguendo* that the statement of counsel was improper, the trial court did not err by waiting until the close of evidence to instruct the jury to disregard. A trial judge is vested with wide discretion in determining the manner

| | | |
|---|---|---|
| (a) actual damages found by the jury: | | $13,600.00 |
| (b) twice the first $1,000.00 of actual damages: | | $ 2,000.00 |
| (c) additional damages: | | $37,800.00 |
| (d) statutory penalty: | | $ 2,000.00 |
| | | $55,400.00 |

3. § 17.46(b) provides, in pertinent part:

Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:

(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

(7) representing that goods or services are of a particular standard, quality or grade, or

that goods are of a particular style or model, if they are of another;

(12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

Tex.Bus. & Com.Code Ann. § 17.46 (Vernon Supp. 1982–1983).

4. § 17.50(a) provides, in pertinent part:

A consumer may maintain an action where any of the following constitute a producing cause of actual damages:

(2) breach of an express or implied warranty;

(3) any unconscionable action or course of action by any person;

\* \* \* \* \* \*

Tex.Bus. & Com.Code Ann. § 17.46 (Vernon Supp. 1982–1983).

and method in which objections to evidence are disposed. *Keith v. Allen,* 153 S.W.2d 636, 637 (Tex.Civ.App.—Galveston 1941, no writ). No ground of error is afforded a complaining party where an instruction to disregard a statement objected to is not contemporaneous with the initial objection. *See Prudential Insurance Co. v. Uribe,* 595 S.W.2d 554, 565 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.). Points of error one and two are denied.

▆ Point of error seven challenges the existence of any evidence supportive of the recovery of damages for mental anguish. The D.T.P.A. provides for the recovery of actual damages, which are those recoverable at common law. *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 939 (Tex.1980). The recovery of damages for mental anguish is dependent on the establishment of (1) an intentional tort, gross negligence, willful and wanton disregard, or (2) accompanying physical injury. *Farmers and Merchants State Bank of Crum v. Ferguson,* 617 S.W.2d 918, 921 (Tex.1981).

▆ In the instant case, the jury specifically found the unconscionable acts and the refusal to return appellee's money upon request had been done knowingly by appellant. Appellee incorrectly contends that "knowingly," as defined in § 17.45(9), is the legal equivalent of "willful" or "willfulness" as required for the recovery of mental anguish. *See Duncan v. Luke Johnson Ford, Inc.,* 603 S.W.2d 777 (Tex.1980); *Brown v. American Transfer and Storage Co., supra.* In *Duncan, supra,* and *Brown, supra,* treble damages were allowed, indicating a finding of knowingly pursuant to § 17.50(b)(1), while damages for mental anguish were denied. We find there was no allegation or proof of willfulness as required.

▆ Physical trauma exceeding worry, vexation, disappointment, anger or resentment is required for the establishment of mental anguish. *Dennis Weaver Chevrolet, Inc. v. Chadwick,* 575 S.W.2d 619, 622 (Tex. Civ.App.—Beaumont 1978, writ ref'd n.r.e.). The symptoms evidencing physical injury must emanate directly from the complained of acts and not from contemporaneous or subsequent circumstances. *Freedom Homes of Texas, Inc. v. Dickinson,* 598 S.W.2d 714, 718 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.).

Luna testified to receiving medical attention for migraine headaches which began several months after the purchase of the automobile from North Star Dodge. In a colloquy between appellant and her counsel, as to the producing cause of the headaches, appellant stated:

A: I get nervous. I get depressed. I get mad.

Q: Anger?

A: Sometimes, because I feel like there is nothing I can do but wait. I get angry because I feel like I was done wrong, and I feel like I am right. And I feel like this should not have happened the way it did.

Q: Okay. We have worry, anger, nervousness, anxiety, flustration [sic]. What else, or does that cover it?

A: What else is there. I guess that is about it.

Appellee also testified the prescribed medication "makes me miss work, and makes me sleepy." The deleterious side effects of the drug prompted Luna to consult Joseph A. Ward, psychotherapist, in an effort to develop alternative means of treatment which would alleviate, or lessen, her need to continue the medication.

▆ In discussing the causes of appellee's anxiety and tension, Ward testified:

There seem to be a few contributory factors for her anxiety and tension. It seems to me that at the top of the list was her loss of independence; or phrased another way, having to depend on other people. Ms. Luna is a very bright and yet independent type person. And when you remove some of her independence it causes anxiety and resulting at times in migraine headaches. She experiences loss of independence specifically by having to depend on others to take her to work, pick her up from work. In other

words, a loss of transportation. She became unhappy because she was unable to participate in any of the usual activities. Also coupled with that were some other factors, the problems that she has had preparing for Court, and also an impending marriage that she is contemplating, and also some academic problems that she has had with her younger son.

Ward, not being a physician, testified only from a psychosocial standpoint. Mental anguish is not established by the vicissitude of having one's social life limited by the lack of transportation, *Brown, supra* at 938, or the inconvenience of having to leave work early and return or periodically missing work entirely. *Dennis Weaver Chevrolet, Inc., supra.* No evidence was adduced showing the refusal to refund appellant's purchase price was the direct cause in fact of the symptoms. We find there was no evidence to support recovery of damages for mental anguish. Point of error seven is sustained. The award of $5,200.00 for mental anguish is set aside. Our disposition of point of error seven obviates the need to address points of error five, six, eight, and that portion of sixteen directed to this award.

 Appellant's eleventh point of error asserts, in part, that there was no evidence to support the award of damages for loss of use of the vehicle. The contention that there was no evidence to support a finding of the jury may be raised for the first time on appeal. *Holt v. Purviance,* 347 S.W.2d 321, 324 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.); *Myers v. Minnick,* 187 S.W.2d 941, 943 (Tex.Civ.App.—San Antonio 1945, no writ). An award of damages, like any other issuable act, must have support in the evidence. *Railway Express Agency, Inc. v. Gray,* 211 S.W.2d 1013, 1019 (Tex.Civ.App.—San Antonio 1948, writ ref'd n.r.e.). A party seeking compensatory damages for the loss of use of the vehicle must establish that actual money loss was incurred. *American Standard County Mutual Insurance Co. v. Barbee,* 262 S.W.2d 122, 124 (Tex.Civ.App.—Fort Worth 1953, no writ). The proper method of proving rental value of an automobile where loss of use has

been over an extended period of time is not by the day, week or month, but by a sum certain covering the entire period. *State v. Brunson,* 435 S.W.2d 242, 244–45 (Tex.Civ. App.—Corpus Christi 1968), *aff'd,* 444 S.W.2d 598 (Tex.1969); *Page v. Hancock,* 200 S.W.2d 421, 424 (Tex.Civ.App.—Austin 1947, writ ref'd n.r.e.); *Shell Petroleum Corp. v. Clement,* 102 S.W.2d 289, 290 (Tex. Civ.App.—Beaumont 1937, no writ).

 In testifying as to her $100.00 per week claim for loss of use, Luna answered:

Q: Okay. And as far as the damages that you are asking for, this $100.00 a week, you haven't kept a record of how many miles that you have used, or driven, those other peoples' cars, have you?

A: A record, no, I haven't.

Q: Have you ever used a bus?

A: Yes, I have.

Q: Have you kept track of how much you have spent in bus fare?

A: No, I haven't.

Q: Have you kept any kind of records at all which would help us in evaluating what ever monetary loss you may have claimed to have suffered as a result of all this?

A: Are you talking about the loss of the car?

Q: Well, yes, exactly.

A: Like being without a car, I know that I couldn't have rented one for a $100.00 a week. I don't think I could have gotten any kind of transportation for $100.00 a week.

Q: Didn't you tell me at the time of your deposition that the $100.00 a week that you came up with is just a figure that is a guess on your part?

A: It is a guess, yes.

Luna's $100.00 per week estimate was corroborated by a witness qualified as an automobile rental agent. The record reflects that appellee did not rent a car and that she was unable to estimate the cost of bus fare

or borrowed transportation. Recovery of damages for loss of use is precluded where an automobile was not rented or where the amounts expended for alternate transportation cannot be established with reasonable certainty. *Finley v. Beck,* 16 S.W.2d 908, 909 (Tex.Civ.App.—Fort Worth 1929, no writ). We find there was no evidence supporting the recovery of damages for loss of use and sustain appellant's contention. Accordingly, the award of $5,200.00 for loss of use is set aside. In light of our disposition of the no evidence contention, it is unnecessary to address points of error four, nine, ten, twelve, and sixteen.

 Appellant contends the award of damages consisting of the monies paid as down payment, trade-in and monthly payments, were grossly excessive and were supported by no evidence or insufficient evidence. The facts of a particular case are dispositive as to whether an award of damages is excessive. *Higginbothan v. O'Keeffe,* 340 S.W.2d 350, 359 (Tex.Civ.App.—Amarillo 1960, writ ref'd n.r.e.). In determining whether a verdict is excessive, the evidence must be considered in a light most favorable to the award. *Green v. Rudsenske,* 320 S.W.2d 228, 235 (Tex.Civ. App.—San Antonio 1959, no writ). Appellate courts should be reluctant to disturb a jury award on the grounds of excessiveness if there is any evidence to sustain the award. *J.A. Robinson & Son, Inc. v. Ellis,* 412 S.W.2d 728, 743 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.).

 A party invoking the 30 day/1,000 mile warranty program was entitled to the return of the down payment and the net value of the trade-in minus any finance charge. Luna testified she attempted to return the car on numerous occasions because of the steering column vibration. This assertion was corroborated by Jose Madrano, her father, and Rudy Ornales, her fiance, who had separately accompanied appellee to the car lot on different occasions. Unable to remedy the situation, appellee returned the car while continuing to make monthly payments. The $3,200.00 amount arrived at by the jury represented the monthly payments, trade-in and cash down payment which totalled $3,195.97. We hold the award of damages was not excessive and that it was supported by sufficient evidence. Points of error three, eleven and seventeen are denied.

Points of error twenty-two and eighteen proclaim, respectively, that appellee did not rely on the money back guarantee in purchasing the car and the guarantee did not afford appellee the status of consumer. The primary purpose of the D.T.P.A. is to provide consumers a cause of action for deceptive trade practices without the burden of proof and the numerous defenses encountered in a breach of warranty suit. *Smith v. Baldwin, supra* at 616. A "consumer" is protected from misleading business practices made in *connection* with a sale, lease, advertisement, etc. *Hi-Line Electric Co. v. Traveler's Insurance Co.,* 587 S.W.2d 488, 490 (Tex.Civ.App.—Dallas 1979), writ ref'd n.r.e. per curiam, 593 S.W.2d 953 (Tex.1980). A consumer is an individual who seeks or acquires goods or services by purchase or lease. § 17.45(4).

 Appellee first learned of the money back guarantee when she returned to North Star Dodge to consummate the purchase. Although Luna stated she "probably would have" purchased the car without the warranty, she testified her reliance on the warranty information from the salesman allayed her last minute trepidations in signing the contract. We find there was sufficient evidence to support the jury's finding of reliance. Appellant concedes Luna was a consumer as to the automobile, but asserts that appellee was not a consumer as to the warranty since the *warranty* was not purchased or leased. We cannot subscribe to appellant's contention that recovery under a warranty of goods is dependent on a showing that a separate amount has been charged or paid for the warranty. In relation to the sale of goods, a warranty is a subsidiary promise ancillary to the main object of the contract. *Whiddon v. General Mills, Inc.,* 347 S.W.2d 7, 10 (Tex.Civ.App.—Fort Worth 1961, no writ). Moreover, appellee pled unconscionability,

by trial amendment granted with leave of court, and obtained a jury finding thereon which is itself sufficient to support recovery. § 17.50(a)(3). Points of error eighteen and twenty-two are denied.

■■■ Appellant asserts the method of computing damages for breach of warranty was incorrect and that the court erred in not instructing the jury as to the proper measure of damages. Failure to object to the form or substance of a special issue prior to its submission constitutes a waiver of the defective submission of such issue. *Allen v. American National Insurance Co.,* 380 S.W.2d 604, 609 (Tex.1964). An objection to a special issue preserves nothing for review absent an indication in the record of a ruling or order on the objection by the trial court. *Johanning v. Moore,* 331 S.W.2d 74, 76–77 (Tex.Civ.App.—Waco 1959, writ dism'd); Tex.R.Civ.P. 272. While reflecting an objection to the method of computing damages for breach of warranty, the instant record is devoid of any indication the action of the trial court was invoked. Points of error fourteen and fifteen are overruled.

Appellant claims the trial court erred in holding the retail installment contract violated article 5069–7.07(7), *supra.* The article states, in pertinent part:

No retail installment contract or retail charge agreement shall:

(7) contain an authorization for the seller or holder or any person acting on the seller's or holder's behalf to retain or dispose of other tangible personal property that is not subject to a security interest and that is acquired in a repossession of a motor vehicle, except property attached to the vehicle, and that the contract or a separate writing requires the seller or holder to send written notice of such an acquisition to the last known address of the buyer as shown by the records of the holder within 15 days of the discovery of the personal property by the seller or holder. Such notice shall disclose to the buyer:

(a) that the buyer may identify and claim the property at a reasonable time before the end of the 30th day after the day on which the notice was mailed or delivered; and

(b) the location at which and reasonable times that which the buyer may identify and claim the property during the period....

The contract states, in pertinent part:

... Seller his agents or representatives, may enter the premises where the property may be and take immediate possession of the property including any equipment or accessories, and Seller may take possession of any other items in the property at the time of the repossession, and hold them without liability until demanded by Buyer....

The evidence showed that neither the contract nor a separate writing required the seller or holder to send written notice of an acquisition of tangible personal property not subject to a security interest. The statutory penalty of $2,000.00 was levied by the trial court. Art. 5069–8.01(b), *supra.*

■■■ The issue presented to us is whether the quoted language of the retail installment contract authorized the seller or holder to "retain" unsecured tangible personal property. Where the meaning of a particular word used in a statute is not statutorily defined, as in the instant case, we must assume the meaning of the word as ordinarily used expresses the legislative intent. *Satterfield v. Satterfield,* 448 S.W.2d 456, 459 (Tex.1969). A party retains tangible personal property by detaining it. *First National Bank v. Yokum,* 189 P. 220, 221, 96 Or. 438 (1920). Retain is variously defined as "to hold or continue to hold in possession or use: continue to have, use, recognize, or accept: maintain in one's keeping." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1979). The cases cited by appellant, *Zapata v. Ford Motor Credit Co.,* 615 S.W.2d 198 (Tex. 1981); *Dub Shaw Ford, Inc. v. Jackson,* 622 S.W.2d 664 (Tex.Civ.App.—Fort Worth 1981, no writ); *Martens v. General Motors Acceptance Corp.,* 584 S.W.2d 941 (Tex.Civ.

App.—Dallas 1979, no writ), are inapposite. None of these cases dealt with a violation of article 5069–7.07(7), *supra.* We hold the contractual provision allowing seller to "take possession of any other items in the property at the time of possession and hold them without liability until demand" constitutes "retention" as contemplated in article 5069–7.07(7), *supra.* Accordingly, the failure of the contract to require the seller or holder to send the appropriate written notice supported the award of damages pursuant to article 5069–8.01(b), *supra.* Point of error eighteen is without merit and denied.

■ Appellant asserts the jury's findings of unconscionability are unsupported by any evidence or that the evidence is factually insufficient. Section 17.45 defines unconscionability as:

(5) 'Unconscionable action or course of action' means an act or practice which, to a person's detriment:

(A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

(B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

Luna testified the steering column vibration prompted her to request on numerous occasions a refund prior to the expiration of the money back guarantee. She further testified the various responses from appellant were: the contract had not been processed and there would be a delay; the proper party was not present to approve the refund, and; the vibration was subject to correction. The refund request and responses were corroborated by her father and her fiance who had accompanied her on separate occasions. Wayne Jones, appellant's former assistant service manager, stated he had detected steering column vibration. He further testified that while most 1980 Omnis vibrate due to the unit construction, he did not communicate this fact to Luna. He acceeded to the statement that he would have a customer return repeatedly for service rather than acknowl-

edge a problem was irreparable. We hold there was some evidence of an unconscionable act or course of action and that such evidence was factually sufficient to support the finding of unconscionability by the jury. Points of error twenty-three and twenty-four are denied.

Appellant contends the amount of attorney's fees is excessive and unsupported by factually sufficient evidence. Barry Snell, attorney for appellee, testified he had spent approximately 60 hours on the case. He stated in some detail the type and amount of work performed. He further testified the hourly rate in San Antonio varied from $75.00 to $85.00 for a case of this nature. He also stated a fee of $7,000.00 would be reasonable and necessary for his service through the trial court; that $5,000.00 was a reasonable fee for an appeal to the Court of Appeals; that a reasonable fee for an application of writ of error to the Supreme Court would be $2,500.00, and; the sum of $2,500.00 would be a reasonable fee if such application were granted. In addition, appellee called an expert witness who testified to the reasonableness of the amounts set forth by appellee's counsel.

■ The jury awarded the full amount of attorney's fees prayed for by appellee. The trial court disallowed recovery on any basis under the Truth-In-Lending Act, *supra,* but allowed recovery of attorney's fees pursuant to article 5069–8.-01, *supra,* and § 17.50(a). It is the province of the jury to determine what is a reasonable value of an attorney's services, and the jury may consider the facts before it in relation to the services rendered as well as the estimate of their value made by attorneys who testified. *Gulf Paving Co. v. Lofstedt,* 144 Tex. 17, 188 S.W.2d 155, 160 (1945). We hold the jury's award of attorney's fees within the range testified to as reasonable and supported by sufficient evidence. Points of error twenty-one and twenty-two are denied.

In accordance with our foregoing opinion, we reform the judgment of the trial court by denying any recovery for mental anguish and the loss of use of the vehicle.

Accordingly, we reduce the amount of the recovery by $41,600.00.

The judgment of the trial court is affirmed in part and reversed and rendered in part.