Fred S. MOORE et al., Petitioners,
v.
Douglas Stephen LILLEBO,
Respondent.

No. C–3508.

Supreme Court of Texas.

July 9, 1986.

Rehearing Denied Feb. 11, 1987.

Malcolm McGregor, El Paso, for petitioners.

Sam Sparks, Grambling, Mounce, Sims, Galatzan & Harris, El Paso, for respondent.

CAMPBELL, Justice.

Fred Moore and Martha Theaker sued Douglas Stephen Lillebo for the wrongful death of their adult son, Paul Moore. Lillebo allegedly fell asleep while driving his car. An accident occurred and Paul, a passenger in Lillebo's car, was killed. The jury found Lillebo 60% negligent and awarded $2,500 in pecuniary damages to Moore and $4,000 in pecuniary damages to Theaker.

Moore and Theaker each requested a single issue which asked the jury to determine damages, if any, for loss of companionship and society, and for mental anguish resulting from Paul's death. The trial judge refused to submit the issues. On appeal, Moore and Theaker contended the trial judge improperly refused to submit their issues. The court of appeals held there was evidence of loss of companionship and society as to each party but concluded there was no evidence the parties suffered mental anguish as a result of Paul's death. Therefore, the court held it was not error to refuse to submit the requested issues. 674 S.W.2d 474. We reverse the judgment of the court of appeals and remand this cause for a new trial.

In 1983, this court rejected the pecuniary loss rule in response to the "seminal question" of "whether damages for mental anguish are recoverable under the Texas Wrongful Death Act for the death of a child." *Sanchez v. Schindler*, 651 S.W.2d 249, 250 (Tex.1983). We recognized in that case, as before, that "injuries to the familial relationship are significant injuries and are worthy of compensation." *Id.* at 252; *Whittlesey v. Miller*, 572 S.W.2d 665, 668 (Tex.1978). Then, as now, we observed that a "destruction of the parent-child relationship results in mental anguish, and it would be unrealistic to separate injury to the familial relationship from emotional injury." *Sanchez*, 651 S.W.2d at 253. When such emotional injuries are alleged, a plaintiff should be permitted to prove them, including recovery for mental anguish. *Id.*

*Sanchez* involved a parent's claim for mental anguish for the loss of a minor child. In *Cavnar v. Quality Control Parking, Inc.,* we expanded the scope of permitted recovery for mental anguish damages to include all family members listed in the wrongful death act. 696 S.W.2d 549 (Tex.1985). In the face of a contention that children should not be allowed to recover mental anguish damages, we said "there is no logical reason to treat an injury to the familial relationship resulting from the wrongful death of any family member ... differently than an injury to such relationship resulting from the wrongful death of a child." *Id.* at 551.

Generally, before awarding mental anguish damages, the majority of states,[1] including Texas, requires proof of a physical injury resulting from mental anguish, or a physical manifestation of mental anguish. *See Payton v. Abbott Labs*, 386 Mass. 540, 437 N.E.2d 171, 175 n. 5 (1982); *Harned v. E-Z Finance Co.,* 151 Tex. 641, 254 S.W.2d

---

1. Some states have entirely done away with the physical injury requirement in a variety of tort contexts. *Bass v. Nooney Co.,* 646 S.W.2d 765, 772 (Mo.1983) (en banc); *Culbert v. Sampson's Supermarkets, Inc.,* 444 A.2d 433 (Me.1982); *Barnhill v. Davis,* 300 N.W.2d 104 (Iowa 1981); *Molien v. Kaiser Foundation Hospitals,* 27 Cal.3d 916, 923, 616 P.2d 813, 817, 167 Cal.Rptr. 831, 835 (1980); *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979); *Leong v. Takasaki,* 55 Hawaii 398, 520 P.2d 758, 762 (1974); *Portee v. Jaffee,* 84 N.J. 88, 417 A.2d 521, 526 (1980); *Montinieri v. Southern New England Telephone Co.,* 175 Conn. 337, 398 A.2d 1180, 1184 (1978); *Taylor v. Baptist Medical Center, Inc.,* 400 So.2d 369, 374 (Ala.1981); *Chappetta v. Bowman Transportation, Inc.,* 415 So.2d 1019, 1022–23 (La.Ct.App. 1982).

81 (1953). In some cases, however, we have recognized exceptions to this general rule. *See Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex.1967).

These exceptions have involved cases of intentional torts, gross negligence, or a willful and wanton disregard for another's rights. *See, e.g., Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 939 (Tex.1980) (rule stated). Thus, we have allowed an award of mental anguish damages for wrongful dishonor of checks upon a showing of malicious intent. *Farmers & Merchants State Bank of Krum v. Ferguson*, 617 S.W.2d 918, 921 (Tex.1981). We held damages for mental anguish recoverable for a willful and unwarranted invasion of privacy in *Billings v. Atkinson*, 489 S.W.2d 858, 861 (Tex.1973). And, in a case of assault and battery, we approved mental anguish damages without forcing the plaintiff to demonstrate any resulting physical injury. *Fisher*, 424 S.W.2d at 630.

Other exceptions exist. Quite often, the nature of the tort alleged assures courts of the genuineness of mental anguish claims, even without resort to proof of physical manifestation. In *Stuart v. Western Union Telegraph Co.*, we allowed recovery for mental anguish damages for a negligently delivered death message. 66 Tex. 580, 18 S.W. 351 (1885); *see also, Western Union Telegraph Co. v. Buchanan*, 129 S.W. 850 (Tex.Civ.App.—San Antonio 1910, no writ). In *Classen v. Benfer*, the court of appeals allowed recovery for mental anguish damages after the mishandling of a corpse. 144 S.W.2d 633, 635 (Tex.Civ.App. —San Antonio 1940, writ dism'd, jdgmt correct). These cases create an exception to the general rule. The nature of the torts assures that the claimants will suffer mental injury. There is no need to require proof of physical manifestation of the mental injury.

Our decisions allowing mental anguish recovery without proof of physical manifestation recognize that mental anguish inheres in the nature of certain torts, and therefore, proof of physical injury is not required. Thus, in *Billings*, we wrote:

damages for mental suffering are recoverable without the necessity of showing actual physical injury in a case of willful invasion of the right of privacy because the injury is essentially mental and subjective, not actual harm done to the plaintiff's body.

489 S.W.2d at 861. Similarly, in *Fisher* we applied the same rule because "personal indignity is the essence of an action for battery; and consequently the defendant is liable not only for contacts which do actual physical harm, but also for those which are offensive and insulting." 424 S.W.2d at 630. Each of these decisions rejected arguments that proof of physical injury should be required. This is because torts inherently involving mental anguish claims demand proof of mental anguish, not physical pain.

Our question is whether the mental anguish already recognized as an element of wrongful death damages must be proved by physical manifestation. Moore and Theaker contend that a family relationship establishes some evidence of mental anguish in the surviving family members when one of the family dies. We agree.

This court has recognized that, in a wrongful death case, an emotional reaction on the part of a parent is a natural by-product of injury to the familial relationship. *Sanchez*, 651 S.W.2d at 252–53; Note, 15 St. Mary's L.J. 185, 194 (1983). All wrongful death actions are predicated on the proposition that a wrongful death necessarily destroys any pre-existing family relationship. In most death cases, the emotional impact of the loss of a beloved person "is the most significant damage suffered by surviving relatives." S. Speiser and S. Malawer, *An American Tragedy: Damages for Mental Anguish of Bereaved Relatives in Wrongful Death Actions*, 51 Tulane L.Rev. 1, 17 (1976).

Wrongful death cases present another circumstance where the genuineness of a mental anguish claim obviates the physical manifestation requirement. Like the battery in *Fisher* and the willful invasion of privacy in *Billings*, the injury in a

wrongful death case is largely emotional. The substance of the recovery sought is for emotional damage to the family unit and its surviving members rather than for physical injuries; thus, the proof should consist of evidence of mental anguish rather than of physical pain. We hold, in a wrongful death cause of action, it is no longer necessary to prove that mental anguish is physically manifested. A physical manifestation of mental anguish is evidence of the extent or nature of the mental anguish suffered, but it is no longer the only proof of mental anguish.

The physical manifestation rule has been expanded to include many symptoms. "Courts have gone to great lengths in order to find a physical injury." Comment, *Texas Bystander Recovery: In the Aftermath of Sanchez v. Schindler,* 35 Baylor L.Rev. 896, 901 (1983). All manner of symptoms have qualified as physical manifestations: nervousness, fatigue, weakened muscles, severe headaches, memory lapses, and "brain deterioration." *Houston Electric Co. v. Dorsett,* 145 Tex. 95, 194 S.W.2d 546 (1946). *See also, e.g. Gulf, C. & S.F. Ry Co. v. Hayter,* 93 Tex. 239, 54 S.W. 944 (1900). Such a wide-ranging meaning has attached to "physical manifestation," that the term has lost much of its former significance; even "embarrassment" and "humiliation" have sufficed in other jurisdictions. *See* R. Byrd, *Recovery for Mental Anguish in North Carolina,* 58 N.C. L.Rev. 435, 456 (1980).

Up to now, identically situated plaintiffs in wrongful death actions would face different standards. The wrongful death survivors of a person killed by an ordinarily negligent tortfeasor had to prove physical manifestation to recover for mental anguish. This was true no matter how loving and closely-knit the family. However, the wrongful death survivors of a person killed by a grossly negligent tortfeasor could recover for mental anguish without proof of physical manifestation. This was true no matter how hateful or openly hostile the family members. Identically situated plaintiffs should face the same standard of proof.

■ Proof of Moore and Theaker's family relationship constitutes some evidence they suffered mental anguish from the wrongful death of their son. The evidence mandates submission of a damage issue on mental anguish. Tex.R.Civ.P. 277. The court of appeals held there was no evidence of mental anguish because there was no testimony concerning how Moore or Theaker learned of their son's death, whether they attended the funeral, or what effect the loss of a child had on their lives. However, we agree with the reasoning of the Eighth Circuit in *Connell v. Steel Haulers, Inc.,* 455 F.2d 688 (8th Cir.1972). In interpreting Arkansas law, the court stated:

> [w]e do not think that Arkansas law requires that parents of a deceased child necessarily make a public exhibition of their grief before or during trial.... We are not convinced that mental anguish necessarily manifests itself objectively to the world, nor do grief stricken parents need to offer evidence of physical symptoms such as sleeplessness, weight loss, nervousness, personality changes, and the like. Mental anguish represents a deep inner feeling of pain and hurt often borne in silence. We are satisfied from our reading of the Arkansas cases that parents, such as the Connells, are entitled to have the issue of mental anguish submitted to the jury on the basis of the emotional impact suggested by the circumstances surrounding their loss. We are convinced that assessment of the resulting grief is a task for which juries have traditionally been considered well-suited, and in which they can be properly expected to draw upon their own experience and empathy.

*Id.* at 691.

We next decide if there is some evidence to support submission of damage issues on loss of society and companionship. If there is some evidence to support Moore's and Theaker's requested issues, the trial court's refusal to submit them constitutes reversible error. *Southwestern Bell Telephone Co. v. Thomas,* 554 S.W.2d 672, 674

(Tex.1977). We must search the record to determine if there is any evidence to support the loss of society and companionship issues. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). We consider only the evidence and the inferences tending to support the issue and disregard all evidence and inferences to the contrary. *Id.* at 823. We agree with the court of appeals there is some evidence to support submission of these issues.

Paul's parents were divorced. After the divorce, he lived with his father while attending high school. He accompanied his father to military duty stations in Europe. Moore testified that Paul "was always helping us in anything we had to do." Paul and his father confided in each other and talked about important decisions, including Paul's decision to attend college.

Paul joined the Army in 1977 and began basic training. He told his father he wanted to learn to be a paramedic. Paul wrote his father and stated, "Dad, I know this is what I want." Paul described his military training, and wrote, "I would really like for you to come to my basic graduation on May the 9th and make you proud." Paul concluded the letter, "Take care. With love, thinking of you, Paul."

Theaker testified that she and Paul competed together, and both won prizes, at National Rifle Association meets. She taught Paul to cook, and he was cooperative with household chores. Paul was remembered as "always a productive son." He lived with his mother the summer after returning from Europe and helped her with the cooking, the yardwork, and repairing the family car. Paul and his mother spent some summers together at a lake house in Michigan. Both enjoyed cooking together and exchanged recipes by mail.

We are mindful of the significant changes which have occurred in wrongful death law during our attempts to bring Texas into line with the majority of American jurisdictions. *See Sanchez,* 651 S.W.2d at 252–53 (a majority of states has abolished the pecuniary loss rule); *Yowell v. Piper Aircraft,* 703 S.W.2d at 630 (Tex.

1986) ("substantial federal and state authority allows [recovery] for loss of inheritance"). Perhaps "the most serious obstacles to gaining a comprehensive understanding of wrongful death damages are posed by mere words." 3 M. Minzer, J. Nates, C. Kimball, D. Axelrod, R. Goldstein, *Damages in Tort Actions* § 22.02 at 22–13 (1985) [hereinafter cited as, Minzer, *Damages in Tort Actions*]. We agree that no analysis of the elements of damages can succeed without operationally defining the terms used. Accordingly, we adopt the following definitions to be used in distinguishing the elements of damage now allowed in wrongful death cases.

■ Pecuniary loss for the parent of an adult child is defined as the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that the parents would, in reasonable probability, have received from their child had the child lived. *See* 3 State Bar of Texas, *Texas Pattern Jury Charges* PJC 81.05 (1970 & Supp.1984). The definition used will vary according to the class of beneficiary and decedent, e.g. spouse, parent, adult child or minor child.

■ Loss of inheritance damages have only recently been allowed in Texas wrongful death actions. *Yowell v. Piper Aircraft Corp.,* 703 S.W.2d 630 (Tex.1986). In *Yowell,* we defined loss of inheritance damages as the present value that the deceased, in reasonable probability, would have added to the estate and left at natural death to the statutory wrongful death beneficiaries but for the wrongful act causing the premature death. *Id.* at 633.

■ The definitions for mental anguish, and loss of society and companionship, present more difficulty. Some have suggested that these damages necessarily overlap. Both of these awards compensate non-economic losses while pecuniary loss and loss of inheritance damages represent direct economic losses. Mental anguish represents an emotional response to the wrongful death itself. Minzer, *Damages in Tort Actions* § 22.30 at 22–153. Loss

of society, on the other hand, constitutes a loss of positive benefits which flowed to the family from the decedent's having been a part of it. *Id.* at 22–152. Mental anguish is concerned "not with the benefits [the beneficiaries] have lost, but with the issue of compensating them for their harrowing experience resulting from the death of a loved one." 1 S. Speiser, *Recovery for Wrongful Death 2d* § 3:52 at 327 (1975). Loss of society asks, "what positive benefits have been taken away from the beneficiaries by reason of the wrongful death?" Mental anguish damages ask about the negative side: "what deleterious effect has the death, as such, had upon the claimants?" *Id.* Mental anguish and loss of society and companionship are distinguishable. *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 585–86 n. 17, 94 S.Ct. 806, 814–15 n. 17, 39 L.Ed.2d 9 (1974); *see also,* Comment, 35 Baylor L.Rev. 882, 893 (1983); Minzer, *Damages in Tort Actions* § 22.30 at 22–152.

▮ In the court's charge in wrongful death cases, mental anguish shall be defined as the emotional pain, torment, and suffering that the named plaintiff would, in reasonable probability, experience from the death of the family member. Companionship and society shall be defined as the positive benefits flowing from the love, comfort, companionship, and society the named plaintiff would, in reasonable probability, experience if the decedent lived.

▮ In awarding damages for mental anguish and loss of society and companionship in a wrongful death case, the trier of fact shall be instructed that it may consider (1) the relationship between husband and wife, or a parent and child; (2) the living arrangements of the parties; (3) any absence of the deceased from the beneficiary for extended periods; (4) the harmony of family relations; and (5) common interests and activities.

▮ The trier of fact should also be instructed that mental anguish and loss of society and companionship are separate elements of recovery. Damages should not overlap, and no double recovery should be allowed. The jury should be instructed: "in awarding damages for loss of society and companionship, if any, you should not consider the mental anguish, if any, caused by the death of [the deceased]." A corresponding instruction would be appropriate for the damage issues on mental anguish, loss of inheritance, and pecuniary loss.

The court of appeals erred in holding there is no evidence Moore and Theaker experienced mental anguish from the death of their son. We reverse the judgment of the court of appeals and remand this cause to the trial court for a new trial.

SPEARS, J., joined by GONZALEZ, J., dissent.

## ON MOTION FOR REHEARING

SPEARS, Justice, dissenting.

The dissenting opinion of July 9, 1986 is withdrawn and the following is substituted.

I dissent for two reasons. First, we should retain the physical manifestation requirement for mental anguish recovery. Second, irrespective of the physical manifestation requirement, the record contains no evidence—of any kind—as to the emotional effect of Paul Moore's death on his parents. And I can find no other jurisdiction that allows recovery for both mental anguish and loss of society and companionship without either a physical manifestation or a bystander's requirement.

Trial was before *Sanchez v. Schindler,* when only the pecuniary value of the decedent's services were recoverable in a wrongful death action. The testimony, therefore, consists of Paul Moore's work contributions to his family. I agree with the majority that this evidence raises a fact issue as to damages for loss of society and companionship; past family interaction is some evidence of future losses of affection, comfort, and assistance. 1 Speiser, Recovery for Wrongful Death § 3:50, at 322 (2nd ed. 1975).

The majority also holds that this same evidence—by itself and without proof of

physical manifestation—is some evidence of mental anguish. I cannot agree.

When Paul Moore died in July 1977, he was 21 years old. Paul's mother had not seen her son for six years, except for one two-week period in 1975. She had not communicated with Paul in two years. Paul's father had not seen his son for over two years prior to his death. His father's only communication with his son in those two years was two letters and one telephone call. Paul's parents were not providing him with any financial support at the time of his death.

Neither parent testified as to their relationship with Paul, or their feelings towards him during his lifetime or after his death. They did not testify as to the effect that Paul's death had on them. There is no evidence that they mourned or experienced unhappiness or sorrow at Paul's death. The majority, referring to the court of appeals opinion, does not dispute that "there was no testimony concerning ... what effect the loss of a child had on their lives."

Regardless of the physical manifestation requirement, there is no evidence of mental anguish of any kind in this case. The record lacks this evidence because the case was tried before *Sanchez v. Schindler,* when the pecuniary loss rule barred non-pecuniary damages. Moore's parents made no attempt to introduce evidence of mental anguish and made no offer of proof. By failing to make an offer of proof, the Moores have waived error. Tex.R.Civ.P. 372; *Gulf Paving Co. v. Lofstedt,* 188 S.W.2d 155, 159 (Tex.1945). See Tex.R. Evid. 103(a)(2).

I also dissent because it is essential that we keep the physical manifestation requirement for mental anguish recovery. The majority acknowledges the Texas rule: the plaintiff cannot recover damages for emotional injuries without physical manifestations, unless the plaintiff proves an intentional tort, gross negligence, or willful disregard. *Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115, 117 (Tex.1984); *Farmers and Merchants State Bank of Krum v. Ferguson,* 617 S.W.2d 918, 921

(Tex.1981); *Duncan v. Luke Johnson Ford, Inc.,* 603 S.W.2d 777, 779 (Tex.1980); *Brown v. American Transfer and Storage Co.,* 601 S.W.2d 931, 939 (Tex.1980). Justice Campbell stated the rule in *Duncan v. Luke Johnson Ford, Inc.,* 603 S.W.2d at 779:

> Damages cannot be recovered for mental anguish alone. *Harned v. E–Z Finance Company,* 151 Tex. 641, 254 S.W.2d 81 (1953). In the present case there is no proof of a willful tort, gross negligence, willful disregard, *or mental anguish causing physical damage.* There is no evidence to support the award of damages for mental anguish. *Duty v. General Finance Company et al.,* 154 Tex. 16, 273 S.W.2d 64 (1954). (Emphasis added.)

The majority adds wrongful death cases as another exception to the physical manifestation requirement, contending that the familial relationship alone provides adequate protection against fraud; however, the majority fails to recognize that the physical manifestation requirement serves three important and related purposes besides preventing fraud. First, the requirement assures that the emotional injury reaches a compensable level. Mere sorrow, anger, worry, or fear have not been and should not be compensable. *See Ryder Truck Rentals, Inc. v. Latham,* 593 S.W.2d 334, 339 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.); *Dennis Weaver Chevrolet, Inc. v. Chadwick,* 575 S.W.2d 619, 622 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.); Prosser, The Law of Torts 328–330 (4th ed. 1971); Stein, *Damages and Recovery: Personal Injury and Death Actions* 50 (1972). Our society has neither the financial nor judicial resources to allow recovery for ordinary grief and sorrow. With a physical manifestation requirement, at least the emotional injury must be severe enough to manifest itself in objective physical symptoms.

Second, the physical manifestation requirement serves to define mental anguish as severe emotional distress. By abandoning both the physical manifestation require-

ment and the bystander's requirement,[1] the majority's standard for mental anguish is so weak as to be meaningless.

Third, and most importantly, the requirement serves to separate mental anguish from loss of society and companionship. Without the requirement, loss of society and companionship damages and mental anguish damages overlap, resulting in a double recovery.

The majority provides no public policy reasons or changes in social conditions that justify abandoning the long-standing physical manifestation requirement. In contrast, in *Sanchez v. Schindler* we explained that we were abolishing the pecuniary loss rule because children were no longer economic assets and the pecuniary loss rule prevented parents from recovering for their real injury—their emotional losses. 651 S.W.2d 249, 251–52 (Tex.1983). Furthermore, whereas abolishing the pecuniary loss rule in *Sanchez v. Schindler* brought Texas in line with the majority of jurisdictions, abolishing the physical manifestation requirement put us in the minority.

In *Sanchez v. Schindler*, 651 S.W.2d at 252–53, this court authorized recovery under the Texas Wrongful Death Act for mental anguish and expressed approval of allowing recovery for loss of society and companionship. Loss of society and companionship damages compensate for the death's injury to family relationships. *Id.* Family members lose the deceased's emotional contributions: affection, comfort, assistance, and companionship. Their injury is essentially emotional. *See Gulf States Utilities Co. v. Reed*, 659 S.W.2d 849, 856 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) (Brown, C.J., dissenting); *Wilson v. Lund*, 80 Wash.2d 91, 491 P.2d 1287, 1292 (1971). Family members should ordinarily recover their emotional damages under loss of society and companionship.

Mental anguish is a heightened emotional injury beyond ordinary grief. Its derivation suggests intensity: anguish is "derived from the Latin word 'anguis', a

snake, referring to the writhing and twisting of the animal body when in great pain." *Freedom Homes of Texas, Inc. v. Dickinson*, 598 S.W.2d 714, 718 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Dennis Weaver Chevrolet, Inc. v. Chadwick*, 575 S.W.2d 619, 622 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.). In *Sanchez v. Schindler*, we held that "a plaintiff should be permitted *to prove* the damages resulting from a tortfeasor's negligent infliction of *emotional trauma*.... Mrs. Sanchez proved she is suffering from traumatic depressive neurosis." (Emphasis added) 651 S.W.2d at 253. Mental anguish damages are for emotional trauma:

> The damages recoverable, however, should be for actual mental injuries rather than mere fear, anger, or sorrow. In most instances the normal grief reaction will result in little or no actual mental injury, and the damages suffered will be minimal or nonexistent. When the emotional trauma results in depression or other secondary reactions, however, the plaintiff should recover for the damages incurred.

*Bedgood v. Madalin*, 600 S.W.2d 773, 779 (Tex.1980) (Spears, J., concurring).

Without the physical manifestation requirement, loss of society and companionship damages and mental anguish damages overlap. Loss of society and companionship damages compensate family members for their emotional injury from losing the deceased's society and companionship. The family member's mental anguish, however, stems largely from the same cause: losing the deceased's society and companionship. Therefore, without a physical manifestation requirement, mental anguish damages encompass the same interest from the same cause at the same level of severity as loss of society and companionship damages. Such an overlap is a classic double recovery.

The physical manifestation requirement prevents the overlap of mental anguish and loss of society and companionship dam-

---

1. *Sanchez v. Schindler*, 651 S.W.2d 249, 254 n. 6 (Tex.1983).

ages. With the physical manifestation requirement, the family recovers for its familial loss under loss of society and companionship, but only for heightened emotional trauma under mental anguish.

*Sanchez v. Schindler* did not present a question of double recovery because the plaintiff there requested only a mental anguish issue. Only three months after *Sanchez*, however, the court of appeals addressed the problem in *Gulf States Utility Co. v. Reed*, 659 S.W.2d 849 (Tex.App.— Houston [14th Dist.] 1983, writ ref'd n.r.e.). The majority held that each damage element was sufficiently distinct to avoid double recovery. *Id.* at 854. The dissent argued that submitting both loss of society and companionship and mental anguish damages would "invite, if not compel, a double recovery." *Id.* at 856 (Brown, C.J., dissenting). Referring to Chief Justice Brown's dissent, the court of appeals in this case denied a mental anguish issue stating:

> The Supreme Court of Texas did not accept this analysis and obviously agreed that these are separate elements which may be submitted separately. If they are separate elements, they must require separate proof. Otherwise a double recovery is permitted as Chief Justice Brown concluded.

674 S.W.2d at 477. Today the majority allows the same proof of family relationship to support these two closely related damage categories, thus permitting a double recovery. The majority even instructs the jury to consider the identical five factors for both loss of society and companionship and mental anguish.

Moreover, under the majority opinion *every* wrongful death claimant—regardless of the facts in a particular case—will be guaranteed submission of both issues. This guarantee is axiomatic: only immediate family members may bring wrongful death actions, Tex.Civ.Prac. & Rem.Code Ann. § 71.004 (Vernon 1986), and family membership per se requires submission of both issues.

Allowing every claimant both submissions ignores reality. Not all family members have relationships. Nonetheless, claimants can submit both issues without proof of a close (or even *any*) relationship to the deceased. No matter how little the evidence of their emotional distress, the following claimants may now submit both issues: parents who have abandoned their children; spouses who have lived apart for years; and children who have never lived with a parent.

The majority's standard strips the trial court of meaningful review of the jury verdict. Because family relationship per se is some evidence for both issues, the trial court cannot grant motions for summary judgment, motions for an instructed verdict, or motions notwithstanding the jury's verdict. With the high cost of litigation and the inflammatory nature of wrongful death cases, the majority's standard gives undeserving cases significant settlement value.

Not only is every plaintiff entitled to both issues, but the majority's suggested definition for mental anguish is inapt. Recovery for mental anguish should be unusual, but the majority's suggested definition makes it the norm. Mental anguish will now be recovered as a matter of course, since a "plaintiff would, in reasonable probability, experience [some "emotional pain"] from the death of the family member."

Despite the proposed instruction's attempt to separate mental anguish and loss of society and companionship, the jury's awards will include different amounts for shades of the same interest. This is analogous to the tale of the six blind men who felt and then tried to describe an elephant. One felt the trunk, one the tusk, one the tail, another a leg, one the ear, and another the side. Each had a different description of the elephant, but they all were describing the same animal. Similarly, the majority's instruction allows different awards for the same injury.

Proper definitions are needed because loss of society and companionship damages

and mental anguish damages are closely related and only finely distinguished categories of emotional harm damages.[2] With improper definitions, such as the majority's, mental anguish and loss of society and companionship issues ask jurors the same question: how much emotional distress has the plaintiff suffered? Asked the same question twice, jurors will give the same answer—twice.

We can justify separate submissions for mental anguish and loss of society and companionship only by preserving their distinction. Unfortunately, the majority destroys any such distinction. I would affirm the judgment of the court of appeals.

GONZALEZ, J., joins in this dissent.

2. The jury charge should appropriately define mental anguish and loss of society:
  Mental anguish: an intense emotional injury, resulting in depression or other physical reactions. Exclude ordinary grief and sorrow.
  Loss of society and companionship: the injury to the familial relationship from the loss of the deceased's affection, comfort, assistance, and companionship.
  The charge should also clearly instruct the jury not to include damages for mental anguish in loss of society and companionship, and vice versa.