**Concurring and Dissenting Opinion Filed November 30, 2020**



In The
Court of Appeals
Fifth District of Texas at Dallas

_____

## No. 05-18-00167-CV
_____

**SARAH GREGORY AND NEW PRIME, INC., Appellants**
**V.**
**JASWINDER CHOHAN, INDIVIDUALLY AND AS NEXT FRIEND AND NATURAL MOTHER OF G.K.D., H.S.D., AND A.D., MINORS, AND AS REPRESENTATIVE OF THE ESTATE OF BHUPINDER SINGH DEOL, ET AL, Appellees**

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-15-02925-E**

## CONCURRING AND DISSENTING OPINION

Before the Court sitting En Banc.
Concurring and Dissenting Opinion by Justice Whitehill

I join the majority opinion save its Part VIII, from which I dissent.

Justice Schenck's dissent highlights important jurisprudential issues regarding the review standards for mental anguish damages in wrongful death cases. His dissent is excellent as far as it goes and standing alone should compel supreme court review of those issues in this case. I write separately because Justice Schenck's dissent does not go far enough.

## I.  *Moore v. Lillebo*

Justice Schenck's dissent stops short because it assumes that *Moore v. Lillebo*, 722 S.W.2d 683 (Tex. 1986) mandates submitting a mental anguish *damages* question for every qualifying family member in every wrongful death case regardless of the evidence—or lack thereof—concerning the nature and extent of that family member's actual resulting mental anguish.  Stated differently, he accepts the idea that *Lillebo* holds that a proper family tie is itself legally some evidence of both the fact of mental anguish injury and the resulting damage amount such that mental anguish damages for the suing family member are presumed and the only question is how much.

Indeed, loose language in *Lillebo* implies that result:

> Proof of [the parents'] family relationship constitutes some evidence they suffered mental anguish from the wrongful death of their son.  The evidence mandates submission of a damage issue on mental anguish.

*Id.* at 686.  But *Lillebo* does not hold that a required family relationship alone is legally sufficient evidence of the amount of resulting mental anguish damages. *Lillebo* is not stare decisis precedent for that idea because that issue was not before the supreme court in that case.  Thus, any implication to that effect is obiter dicta.

More specifically, *Lillebo* was a no evidence review case concerning the fact of mental anguish injury—not the quantum of related damages.  The trial court there declined to submit a mental anguish damage question because there was no evidence that the claimants suffered any physical manifestations of their mental anguish.  The

–2–

supreme court reversed, holding that physical manifestation proof was no longer required to recover mental anguish damages in wrongful death cases:

> We hold, in a wrongful death cause of action, it is no longer necessary to prove that mental anguish is physically manifested. A physical manifestation of mental anguish is evidence of the extent or nature of the mental anguish suffered, *but it is no longer the only proof of mental anguish*.

*Id*. (emphasis added). Thus, the factual sufficiency of the evidence supporting an amount of resulting mental anguish damages was not at issue in that case.

Furthermore, other parts of *Lillebo* illuminate that the presumed factum of mental anguish injury is rebuttable and that evidence of more than just a qualifying family relationship is required to prove a recoverable damage quantum amount. For example, the preceding highlighted *Lillebo* quote recognizes that there are other forms of mental anguish evidence beyond physical manifestation of that injury. To that end, *Lillebo* recognizes that not all family relationships are loving and caring—indeed some such relationships may be hateful or openly hostile. *See id*.

Additionally, *Lillebo* quotes extensively from the Eighth Circuit's exposition of Arkansas law to the effect that mental anguish recoveries are to be based on the emotional impact suggested by the circumstances surrounding the claimant's loss. *Id*. (quoting *Connell v. Steel Haulers, Inc.*, 455 F.2d 688, 691 (8th Cir. 1972)).

Thus, *Lillebo* acknowledges that losing a loved one may well inflict on different family members varying degrees of mental anguish in a range from great pain to none, depending on their interpersonal histories and the circumstances of the

loss. That being so, it follows that the presumption of mental anguish injury from the wrongful death of an immediate family member is rebuttable and that some legally sufficient evidence beyond a mere family relationship is necessary to support an awarded mental anguish damage amount. *See Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 161 (Tex. 2012) (conclusory evidence is legally no evidence).

Finally, *Lillebo* also holds that mental anguish, on one hand, and loss of society and companionship, on the other, are separate damage categories that compensate separate types of injuries. 722 S.W.2d at 687–88. Accordingly, loss of society and companionship damages evidence must be different from mental anguish damages evidence so that evidence of the former is no evidence of the latter.

But Justice Schenck's opinion is correct in that, like punitive damages, mental anguish damages awards must be subject to articulable, objective review standards lest they become impermissible arbitrary and due process deficient punishments.

## II. Application

In this specific case, claimants' sole jury argument for a mental anguish damages amount based on six cents per mile driven has no mooring to any individualized mental anguish suffering or related quantum facts in evidence for any particular plaintiff. As such, it is a naked plea for an emotional, punitive response with no evidentiary support.

Additionally, the jury's total damages findings show that claimants' jury argument harmed appellants. Claimants argued that the jury should award total damages of six cents per mile driven in the accident year, which came out to $39 million. That calculation was unmoored to facts concerning the claimants' actual injuries and arbitrary on its face. Yet, the jury awarded damages totaling $38,801,775, including almost $36 million in *noneconomic* damages.

Moreover, the jury awarded identical sums to several claimants—including claimants from different families. For example, the jury awarded $160,000 for past mental anguish to each of the Vazquezes' three children, Hector Perales's son Elijah, two of Deol's children, and Deol's parents. It also awarded the three surviving spouses the same $525,000 for past mental anguish damages. These findings suggest that the jury did not make the required individualized determinations rooted in the evidence.

Furthermore, within the Deol family, the jury awarded different family members the same amounts for several noneconomic damages categories. This further indicates that the jury's fact findings are not rooted in the evidence specific to each claimant.[1] First, there is legally no evidence supporting G.D.'s mental anguish damages awards of $5,000 for past mental anguish and $92,500 for future mental anguish. G.D. was seven months old when Deol died and about four and a half years old at trial. Chohan's sister took care of her when they learned of Deol's death. There is no evidence that four year old G.D. suffered any past mental anguish at all through trial. Likewise, although G.D. may suffer future loss of companionship injuries and damages for not having her father, on this record it is pure speculation as to how much future mental anguish she will experience from his death.

[1]

|  | Wife | Each Son | G.D. | Mother | Father |
|---|---|---|---|---|---|
| Loss of past companionship | $350,000 | $160,000 | $160,000 | $160,000 | $160,000 |
| Loss of future companionship | $2,625,000 | $1,200,000 | $1,200,000 | $160,000 | $160,000 |
| Past mental anguish | $525,000 | $160,000 | $5,000 | $160,000 | $160,000 |
| Future mental anguish | $3,937,500 | $925,000 | $92,500 | $160,000 | $160,000 |
| Total | $7,437,500 | $2,445,000 | $1,457,500 | $640,000 | $640,000 |

Second, the evidence concerning the mental anguish impact of Deol's death on his father is similarly empty, consisting of evidence that the father is sad. That conclusory evidence is legally no evidence. And even if it were legally some evidence, it would not pass factual sufficiency muster under existing standards.

### III. Conclusion

I write these things not to denigrate the loss most people feel from the wrongful death of an immediate family member. Surely that pain can be real and should be compensated when there is evidence measured against an articulable objective standard supporting it. Accordingly, I urge the supreme court to consider this case and provide guidance in this murky area of the law.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

Richter, J., joins this opinion

180167DF.P05